People v Hughes (2021 NY Slip Op 06231)





People v Hughes


2021 NY Slip Op 06231


Decided on November 12, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, NEMOYER, TROUTMAN, AND WINSLOW, JJ.


725 KA 17-01344

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
SAMANTHA L. HUGHES, ALSO KNOWN AS SAM, DEFENDANT-APPELLANT. 






ANDREW G. MORABITO, EAST ROCHESTER, FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered November 23, 2016. The judgment convicted defendant upon her plea of guilty of kidnapping in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously reversed on the law, the plea is vacated, that part of defendant's omnibus motion seeking to suppress her statements is granted to the extent of suppressing any statements made after 5:00 p.m. on December 6, 2015, and the matter is remitted to Supreme Court, Monroe County, for further proceedings on the indictment.
Memorandum: Defendant appeals from a judgment convicting her upon her plea of guilty of kidnapping in the second degree (Penal Law § 135.20). We agree with defendant, and the People correctly concede, that the waiver of the right to appeal is invalid. Defendant orally waived her right to appeal and executed a written waiver of the right to appeal. The language in the written waiver is inaccurate and misleading insofar as it purports to impose "an absolute bar to the taking of a direct appeal" and purports to deprive defendant of her "attendant rights to counsel and poor person relief, [as well as] all postconviction relief separate from the direct appeal" (People v Thomas, 34 NY3d 545, 565 [2019], cert denied — US &mdash, 140 S Ct 2634 [2020]). Supreme Court's colloquy regarding the waiver of the right to appeal somewhat remedied the mischaracterization of the waiver as an absolute bar to the right to appeal inasmuch as the court referred to issues that would still be preserved for appeal, including ineffective assistance of counsel and "some other constitutional issues." The court's verbal statements, however, did nothing to counter the other inaccuracies set forth in the written appeal waiver. A "waiver[] cannot be upheld . . . on the theory that the offending language can be ignored and that [it is] enforceable based on the court's few correctly spoken terms" (id. at 566).
Although defendant's contention that she received ineffective assistance of counsel survives her guilty plea to the extent that she contends that her plea was infected by the allegedly ineffective assistance (see People v Ollman, 147 AD3d 1452, 1453 [4th Dept 2017], lv denied 29 NY3d 1000 [2017]), we reject that contention. Defendant contends that defense counsel was ineffective by failing to argue at the Huntley hearing that the police violated defendant's rights by questioning her without Miranda warnings and failing to seek suppression of her confession. The record shows, however, that defense counsel indeed sought suppression of defendant's statements and argued, inter alia, that defendant was in police custody and was not given Miranda warnings.
Defendant next contends that the court erred in refusing to suppress statements that she made to Rochester Police Department investigators. We agree with defendant in part. It is well settled that Miranda warnings must be given when a defendant is subject to custodial interrogation (see People v Paulman, 5 NY3d 122, 129 [2005]; People v Berg, 92 NY2d 701, [*2]704 [1999]; People v Torres, 172 AD3d 758, 760 [2d Dept 2019]). "In determining whether suppression is required, the court 'should consider: (1) the amount of time the defendant spent with the police, (2) whether his [or her] freedom of action was restricted in any significant manner, (3) the location and atmosphere in which the defendant was questioned, (4) the degree of cooperation exhibited by the defendant, (5) whether he [or she] was apprised of his [or her] constitutional rights, and (6) whether the questioning was investigatory or accusatory in nature' " (People v Lunderman, 19 AD3d 1067, 1068-1069 [4th Dept 2005], lv denied 5 NY3d 830 [2005]). In determining whether a defendant is in custody, the subjective belief of the defendant and the subject intent of the officers is not determinative (see Torres, 172 AD3d at 760). Rather, the question is whether a reasonable person, innocent of any crime, would have believed that he or she was not free to leave at the time he or she was being questioned (see Paulman, 5 NY3d at 129; People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]; People v McCabe, 182 AD3d 772, 774-775 [3d Dept 2020]).
Here, the police were investigating the disappearance of two students from the University of Rochester. They were aware that defendant was one of the last people to have seen the two students at approximately 2:30 a.m. on December 5, 2015. Sometime after 2:00 p.m. on December 6, 2015, the police arrived at the house of defendant's friend, where defendant agreed to speak with an investigator privately inside the investigator's unmarked vehicle. Defendant was seated in the front passenger seat, and the questioning lasted 10 to 15 minutes. Defendant then agreed to accompany the police to the Public Safety Building (PSB) to speak with other investigators. Contrary to defendant's contention, she was not in custody when she was in the police vehicle at her friend's house or during the ride to the PSB. Defendant had agreed to speak with the investigator, and the brief questioning was investigatory, not accusatory (see People v Box, 181 AD3d 1238, 1239 [4th Dept 2020], lv denied 35 NY3d 1025 [2020], cert denied — US &mdash, 141 S Ct 1099 [2021]; People v Spoor, 148 AD3d 1795, 1796 [4th Dept 2017], lv denied 29 NY3d 1134 [2017]; Lunderman, 19 AD3d at 1068). Under the circumstances, a reasonable person, innocent of any crime, would not have believed that he or she was in custody (see generally Yukl, 25 NY2d at 589).
At the PSB, defendant was placed in a conference room and was questioned by an investigator from approximately 3:15 p.m. until 5:00 p.m. At 5:00 p.m., another investigator accompanied defendant to the bathroom, and the investigator continued questioning defendant. During that conversation, defendant made admissions demonstrating that she was more involved in the case than she had initially revealed, that she knew who was holding the students, and that one of the students had been shot. Defendant indicated that if the police let her go, she could contact the people who were holding the missing students, but the investigators refused her offer and continued questioning defendant in an interview room. At approximately 8:00 p.m., defendant divulged the location of the missing students, who were then rescued by the police. The police continued questioning defendant until the following afternoon, not including a break when defendant slept on a cot in the interview room. At no time was she ever given Miranda warnings.
We note that the People do not contend that the emergency doctrine exception applies here to justify the police questioning of defendant without administering Miranda warnings (see generally People v Doll, 21 NY3d 665, 670-671 [2013], rearg denied 22 NY3d 1053 [2014], cert denied 572 US 1022 [2014]). We conclude that defendant's statements that were made after 5:00 p.m. on December 6 were the product of custodial interrogation and should have been suppressed inasmuch as defendant never received Miranda warnings (see People v Glanton, 72 AD3d 1536, 1537 [4th Dept 2010]; People v Baggett, 57 AD3d 1093, 1095 [3d Dept 2008]). At that time, the questioning changed from investigatory to accusatory, and a reasonable person, innocent of any crime, would not have believed that they were free to leave (see generally Yukl, 25 NY2d at 589). We therefore grant that part of defendant's omnibus motion seeking to suppress her statements to the extent of suppressing any statements made after 5:00 p.m. on December 6, 2015.
In the absence of any proof that defendant would have pleaded guilty even if her statements were suppressed, we conclude that the plea must be vacated " '[i]nasmuch as the erroneous suppression ruling may have affected defendant's decision to plead guilty' " (Glanton, 72 AD3d at 1538; see People v Henry, 133 AD3d 1085, 1087 [3d Dept 2015]; see generally People v Grant, 45 NY2d 366, 379-380 [1978]).
Entered: November 12, 2021
Ann Dillon Flynn
Clerk of the Court